IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2000 Session

## ALPHA FINANCIAL SERVICES, INC., v. KARL KINDERVATER

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 99C606      Hon. W. Neil Thomas, III., Circuit Judge**

## FILED JANUARY 22, 2001

### No.E2000-01425-COA-R3-CV

This is a dispute over the amount of debt owing under a factoring agreement for which the defendant signed a "continuing guaranty." The Trial Court granted summary judgment. We vacate.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court vacated.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. A separate opinion was delivered by CHARLES D. SUSANO, JR., J.

R. Deno Cole, Knoxville, Tennessee, for Defendant-Appellant, Karl Kindervater.

Stephen R. Beckham, Chattanooga, Tennessee, for Plaintiff-Appellee, Alpha Financial Services, Inc.

### OPINION

In this action for debt brought by plaintiff, Alpha Financial Services, Inc. ("Alpha"), against defendant, Karl Kindervater ("Kindervater"), the Trial Judge granted Alpha summary judgment.

In 1998, Alpha entered into a factoring agreement, with Personal Security Specialists ("PSS"). PSS is a licensed security company which provides security guards to individuals and businesses. Kindervater, is the president of PSS. The Agreement provided that Alpha would make

advances against the invoices issued by PSS in amounts equal to 80% of the face amount of the invoice, with the remaining 20% to be remitted to a profit reserve account. When the invoice was paid in full to Alpha, Alpha would remit the remaining 20% to PSS, after deducting fees, interest, debts, etc. Uncollected and uncollectible invoices, i.e., those remaining unpaid for 90 days, were "charged back" to PSS by a debit against the "profit reserve."

At the time the Agreement was signed, Kindervater signed, as an individual, a "Continuing Guaranty." The guaranty stated that Kindervater would be personally liable to Alpha for amounts due under the Agreement between Alpha and PSS, plus "all expenses (including court costs and attorneys' fees), paid or incurred by Alpha in endeavoring to collect such indebtedness, obligations and liabilities, or any part thereof, and to enforce this guaranty."

In 1999, PSS filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Tennessee, Northern Division.

On March 18, 1999, Alpha filed suit against Kindervater, alleging that he was liable for debts accrued by PSS under its Agreement.

Alpha filed a Motion for Summary Judgement contending that there was no genuine issue as to any material fact concerning the amount owed. The President of Alpha W. Alexander Buttram gave an affidavit that as of March 11, 1999, the aggregate unpaid balance of the invoices against which Alpha made advances that had not been charged back to PSS was $36,997.83. He further stated that Alpha had made advances to PSS, as evidenced by a negative balance in the "profit reserve," and the aggregate unpaid balance of the advances was $14,105.44. Buttram also testified that Alpha had collected from PSS $1,711.08 of the amount owed, but did not anticipate being able to collect more from PSS.

Kindervater, in responding to the Motion, filed an affidavit disputing the amount Alpha claimed was owned. He attached a "request for verification letter" that he had received from a CPA, which sought to confirm the purported unpaid balance of $27,467.96 allegedly owned to Alpha as of March 31, 1999. The accountant, is an "independent auditor" of Alpha's books and records.

The Trial Judge denied the Motion for Summary Judgment without prejudice, and ruled that the "request for verification letter" submitted with Defendant's affidavit constituted hearsay. The Court further determined that the undisputed facts showed that PSS owed $36,997.83 to Alpha as of March 16, 1999. However, the motion was denied on the grounds that there was insufficient proof to determine the exact amount owed to the Plaintiff as of March 31, 1999.

Subsequently, plaintiff resubmitted its Motion for Summary Judgment, and in another affidavit Buttram testified that Alpha received $1,946.56 in invoice receivables on behalf of PSS between March 16, 1999 and March 31, 1999, but that it charged back PSS an additional $7,583.31 to the profit reserve, modifying the net sum to be $49,156.71 owned to Alpha as of March 31, 1999.

Kindervater disputed this in another affidavit, but the Trial Judge granted summary judgment, finding it undisputed that PSS owned Plaintiff $47,445.63 plus interest and attorney fees, for which defendant was liable. After attorney fees and expenses were established, the Court entered Judgment for $71,479.19, plus interest and costs.

In reviewing summary judgments, no presumption of correctness attaches to the lower court's judgment, *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The moving party has the burden of proving that its motion satisfies these requirements. *Id.*

The standards governing the assessment of evidence in the summary judgment context are well established. The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Byrd v. Hall*, 847 S.W.2d 208, 210-211 (Tenn. 1993). Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *Id.*

While there is no material dispute as to some amounts claimed by Alpha, it states in its Statement of Undisputed Material Facts:

> 11. In addition, as of March 16, 1999, Alpha had made advances to PSS, evidence by a negative balance in the "profit reserve," is $14,105.44.

> * * * *

> 13. Between March 16, 1999, and March 31, 1999, (i) Alpha received payments on Invoices aggregating $1,946.56, and (ii) an additional $7,573.31 in Invoices was charged back to PSS under the Agreement, which (A) reduced the figure set forth in Paragraph 10, above, from $36,997.83 to $27,467.96, and (B) increased the figure set forth in Paragraph 11, above, to $21,688.75.

Alpha bases its figure for the "negative profit reserve" solely on the affidavit of Buttram, and does not submit any accounting or other records in support. Buttram's affidavits state that he "has personal knowledge of the facts stated herein and is authorized to make th[ese] affidavit[s] on behalf of the corporation." As to the balance in the profit reserve, he provides the above figures based on his personal knowledge.

Defendant attacks these figures as being unsupported by evidence, and submitted his Response to the Undisputed Material Facts, stating that Defendant disputed paragraphs 11 and 13 regarding the negative balance in the profit reserve account, and that PSS was never paid the profits. Kindervater's affidavit is "based upon [his] personal knowledge, individually and as the president of PSS." Kindervater testified that PSS never received the profits that the aging report and the "Weekly Profit/Advance Analysis" indicated were due PSS.

Alpha argues the affidavit is insufficient to create a dispute as to the material fact, and in its brief to this Court states:

> [Defendant] argues that the Weekly Profit/Advance Analysis reports attached to the affidavit submitted in response to Alpha's renewed motion for summary judgment somehow undermines Alpha's president's affidavit, because those reports indicate "profits" payable to PSS. However, there is not dispute that the "profits" were credited to the "profit reserve" but were never remitted to PSS because the aggregate amount of the uncollectible invoices always exceeded the aggregate amount of the "profits," i.e., the balance of the "profit reserve" was always negative.

While this is how the arrangement was established, Alpha has offered no evidence of what monies actually went into or came out of the profit reserve. The aging reports only address those invoices that were not yet due.

The only evidence offered on this point was through the affidavit of Buttram, and that affidavit does not clearly establish the negative amount of that reserve. Buttram states in his first affidavit, according to his personal knowledge "[t]hat Alpha had made advances to PSS, evidenced by a negative balance in the 'profit reserve,' and the aggregate unpaid balance of such advances is $14,105.44." This is in addition to the "aggregate unpaid balance of the invoices against which Alpha made advances under the Agreement that had not by then been charged back to PSS." Buttram's second affidavit indicates that "an additional $7,583.31 in invoices was charged back to PSS under the Agreement," and thereby "increased the negative balance in the 'profit reserve' to $21,688.75."

Taking the evidence in a light most favorable to the opponent of the motion, there is a genuine dispute as to the amount of money owed with regard to the negative balance in the profit reserve account. No supporting financial records for Alpha's figure of $21,688.75 was presented, and Alpha also fails to provide evidence as to the total amount of accounts that were "credited back" to PSS or the amount of profits due PSS against which the former is offset. Kindervater disputes Alpha's claimed amount of debt based upon his own knowledge and the fact that the Weekly Profit/Advance sheets showed profits due to PSS that PSS never received. While Alpha argues that these profits were credited to the account and that Kindervater has offered no evidence to the contrary, Alpha failed to provide evidence that a credit took place, other than those transaction occurring between March 16 and March 31, 1999.

Kindervater's affidavit, stating that he did not owe the amount claimed by Alpha because profits due to PSS were never paid, also establishes a genuine issue of a material fact, rendering the summary judgment improper.

Finally Alpha attacks Kindervater's affidavit as not being in compliance with the Rules of Civil Procedure and therefore not sufficient to establish a genuine issue of material fact.

Alpha argues that the "bald statements that the Guarantor disputes the amounts set forth in Alpha's affidavits are clearly insufficient to withstand a motion for summary judgment." Alpha analogizes the statements in Kindervater's affidavits to those that were held insufficient in *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978):

> The affidavit then concludes:
>
> > "Upon the information I have, I believe that all of the aforementioned representations of the plaintiffs were made by them knowing that they were false and they were intended to mislead me."
>
> > The sources of the "information" upon which petitioner based this "belief" are not revealed. Petitioner's own belief does not constitute 'such facts as would be admissible in evidence' as required by Rule 56.05, supra. Nor does the affidavit show 'affirmatively that the affiant is competent to testify to the matters stated therein,' as required by the rule."

*Fowler*, at 498.

Notwithstanding Alpha's argument, the case at hand presents facts significantly divergent from those in *Fowler*. In *Fowler*, the affiant was testifying as to what he believed was the intention of the opposing party. Without stating that he has specific knowledge of this, he does not establish that he is competent to testify to this. On the other hand, Kindervater testified to facts regarding the financial situation of the company of which he was president, and therefore had the knowledge. The language that he "disputes" the amounts is similar to saying that he "does not owe" the amount charged, and is not akin to saying that he "believes" the amount to be wrong. Kindervater's affidavits are sufficient to establish disputed material facts with regard to the amount due as a result of the negative balance in the profit reserve account.

Accordingly, the summary judgment is vacated and the cause is remanded for further proceedings consistent with this Opinion. The costs are adjudged against Alpha Financial Services, Inc.

_____
HERSCHEL PICKENS FRANKS, J.